IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| ROGER E. MIDDAUGH and HEATHER NICHOLE MOORE MIDDAUGH, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 6:19-CV-00052-H-BU |
| INTERBANK, | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

By a standing order of reference, United States District Judge James Wesley Hendrix referred this civil action to the undersigned for pretrial management under 28 U.S.C. § 636(b). Now before the Court is Defendant InterBank's Second[1] Rule 12(b)(6) Motion to Dismiss, or, in the Alternative, Motion for More Definite Statement Pursuant to Rule 12(e), or, in the Alternative, Rule 12(c) Motion for Judgment on the Pleadings and Brief in Support Thereof (the "Motions"). The undersigned enters the following findings, conclusions, and recommendation that, for the reasons explained below, InterBank's Rule 12(b)(6) motion should be GRANTED in part, InterBank's Motion for More Definite Statement should be GRANTED in part, and InterBank's Motion for Judgment on the Pleadings should be DENIED.

---

[1] InterBank filed a previous Rule 12(b)(6) Motion to Dismiss, or, in the Alternative, Motion for More Definite Statement Pursuant to Rule 12(e), or, in the Alternative, Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings (Dkt. No. 37) in response to a pleading denominated by Plaintiffs as their Second Amended Complaint (Dkt. No. 35), which was subsequently unfiled by the Court. Therefore, the Court found that previous motion by InterBank was moot. *See* Dkt. No. 79. The instant motion by InterBank relates to Plaintiffs' current live complaint, Dkt. No. 65, denominated as Plaintiffs' First Amended Complaint.

## I. FACTUAL BACKGROUND

Plaintiff Roger Middaugh ("Plaintiff")[2] started banking with InterBank's predecessor institution, First Coleman National Bank, in 1997, and has continued banking there at all times relevant to this lawsuit. InterBank is an Oklahoma banking institution with several branches throughout Texas.

Plaintiff was in the business of purchasing, remodeling, and selling houses. He financed these properties through mortgages provided by InterBank and, at one time, was financing as many as 86 properties with InterBank.

In the beginning of this financing relationship, each property was financed by a separate mortgage. However, this changed in 2010 when, for reasons that appear to be hotly disputed, the parties renegotiated the individual mortgages and restructured them into a single note, cross-collateralized the properties, and added balloon provisions. This restructuring also apparently provided for Plaintiff to receive additional working capital for his business. This 2010 cross-collateralization (the "2010 note transaction") serves as the basis for most of Plaintiffs' claims against InterBank. Another basis for Plaintiffs' claims against InterBank arises from an even earlier event – a 2007 hailstorm that damaged several of Plaintiff's rental properties across Coleman County. Here, too, the parties sharply dispute entitlement to the insurance proceeds in connection with Plaintiff's mortgaged properties.

---

[2] Plaintiff was granted leave by this Court to add his wife, Heather Middaugh, as a co-plaintiff by order dated February 14, 2020. *See* Dkt. No. 30. For reasons explained below, the First Amended Complaint adding her was not filed by Plaintiff until June 16, 2020. *See* Dkt. No. 65. Accordingly, references to Plaintiff prior to June 16, 2020 are only to Roger Middaugh and thus are to the singular, "Plaintiff." Thereafter, such references are to both Roger Middaugh and Heather Middaugh and thus are to the plural, "Plaintiffs."

Plaintiff claims that InterBank wrongfully pressured him into the 2010 note transaction by threatening to call the individual mortgage notes if he did not cooperate. Dkt. No. 65 at 2. Plaintiff claims that InterBank forced his participation in the 2010 note transaction so that InterBank could seize all the mortgaged properties in a single "swoop." *Id.* at 3.

InterBank suggests a more complex situation involving eight separate loan transactions occurring between InterBank and Plaintiff between 2010 and 2018, which refinanced several prior loans, fully cross-collateralized 79 mortgaged properties, and totaled $2,657,407.62 in the aggregate original principal amount. Dkt. No. 76 at 9. InterBank contends that the loans originating between 2010 and 2018 were modified on several occasions at either Plaintiff's request or as a result of Plaintiff's inability to make timely payments. *Id*.

Ultimately, although Plaintiff maintains that he was "diligently" servicing the mortgages, InterBank commenced foreclosure proceedings in 2019. Dkt. No. 65 at 2.II.

## PROCEDURAL BACKGROUND

A. <u>Plaintiff's Original State Court Petition</u>

Plaintiff initially filed a lawsuit in the 214th Judicial District Court of Nueces County, Texas on July 1, 2019, opposing InterBank's foreclosure on several properties in Coleman County, Texas. Dkt. No. 1-4. In Plaintiff's state court petition, he alleged causes of action for abuse of process, *quantum meruit,* and quiet title, with additional factual allegations for claims for libel, slander, defamation, wrongful/illegal foreclosure, breach of contract, intentional infliction of emotional distress, fraud, and violations of state and federal "consumer collection laws." Dkt. No. 1-4.

On July 9, 2019, InterBank, an Oklahoma corporation, removed this action to the United States District Court for the Southern District of Texas on diversity of citizenship grounds. *See*

3

Dkt. No. 1; 28 U.S.C. § 1332(a). On August 26, 2019, the Southern District of Texas transferred the case to this Court, as the San Angelo Division of the United States District Court for the Northern District of Texas is the proper venue for Plaintiff's claims. Dkt. No. 11.

B. Plaintiffs' Attempts to Amend Their Complaint

Once removed from state court and subsequently transferred to this Court, Plaintiff attempted to amend his complaint several times, contributing to what has been an unnecessarily tortured procedural history for this case. On January 22, 2020, and without leave of Court, Plaintiff filed the first of what would be four attempts by Plaintiffs to amend their complaint in this case, Plaintiffs' First Amended Complaint. Dkt. No. 17. Following the filing by InterBank of a motion to strike that complaint (Dkt. No. 20), the parties stipulated to its withdrawal (Dkt. No. 21), and the Court ordered that pleading struck (Dkt. No. 23).

On February 1, 2020, three days after the Court struck Plaintiff's First Amended Complaint, Plaintiff filed a motion for leave to file a different "second" First Amended Complaint. Dkt. No. 26. However, he failed to attach the proposed amended complaint to his motion for leave as required by Local Civil Rule 15.1(b). Two days later, Plaintiff filed, as a separate document, the proposed amended complaint. *See* Dkt. No. 27. This proposed amended complaint included two additional causes of action that were not in the struck "first" First Amended Complaint and purported to add Middaugh's wife, Heather Middaugh, as co-plaintiff, although Plaintiff Roger Middaugh neither sought leave to join her as a party as required by the Scheduling Order nor otherwise described her interest in the litigation. This was the second attempt by Plaintiffs to amend their complaint.

Notwithstanding these deficiencies, the Court granted Plaintiff's motion for leave, permitting him to file the proposed "second" First Amended Complaint and join Heather

Middaugh as a plaintiff for reasons explained in that order.  Dkt. No. 30.  In the docketing text for

that order, the District Clerk noted that "[t]he requesting party must file the document with the

clerk." [3]  *Id*.

On March 6, 2020, three weeks after the Court granted Plaintiffs leave to file the proposed

"second" First Amended Complaint, and presumably in response to the order granting leave to file

it, Plaintiffs filed not the nine-count proposed "second" First Amended Complaint for which leave

to file was granted, but instead a new ten-count pleading entitled "Second Amended Complaint"

that purported to add yet another cause of action for "Willful and Intentional Tortious Interference

of Contract."  *See* Dkt. No. 35.  Leave was neither sought nor granted for the filing of this Second

Amended Complaint.  Additionally, this Second Amended Complaint, for the first time and for

reasons unknown to the Court, also sought exemplary damages in addition to punitive damages.

*Id*. This represented the third attempt by Plaintiffs to amend their complaint in a six-week period.

Still not satisfied, Plaintiffs filed yet a different "second" Second Amended Complaint

approximately three weeks later on March 30, 2020, again without leave of court, in which they

replaced the "Extreme and Outrageous Conduct" cause of action with an "Illegal Foreclosures"

cause of action. Dkt. No. 38.  The day *after* this fourth attempt at an amended complaint in the

span of just two months, Plaintiffs filed a motion seeking leave to file that complaint.  Dkt. No.

41.

---

[3] Local Rule 15.1(b) of the Local Civil Rules of the Northern District of Texas provides that if leave to amend a pleading is granted, the amended pleading will be deemed filed as of the date of the order granting leave, *or as otherwise specified by the presiding judge*.  Here, the Court's order granting leave *permitted* Middaugh to file his amended pleading rather than deeming the amended pleading having been filed.  As the Clerk's docketing text made clear, it was incumbent upon Plaintiff Roger Middaugh to file the document for which leave to file had been granted.

C.  <u>Plaintiffs' First Amended Complaint Becomes the Operative Pleading</u>

Plaintiffs' vacillating allegations and failure to follow the rules and orders of this Court unnecessarily muddled the pretrial management of this case.  Ultimately, by Order entered June 8, 2020 (Dkt. No. 59), the Court directed Plaintiff to file the First Amended Complaint for which leave to file had been granted, which added Plaintiff's wife, Heather Nichole Moore Middaugh, as a co-plaintiff and thereafter constituted the operative pleading in this case for the Plaintiffs.  Dkt. No. 65.   Plaintiffs complied with the Court's Order and filed their First Amended Complaint on June 16, 2020.  *See id.*

D.  <u>InterBank Timely Filed its Motion to Dismiss Under Rule 12(b)(6)</u>

InterBank filed its Motions on June 30, 2020, which included a Rule 12(b)(6) motion. Plaintiffs assert in their Response that InterBank's Rule 12(b)(6) motion is untimely because it was filed after InterBank's July 22, 2019 Answer.  Dkt. No. 77 at 21.  This assertion reflects a misunderstanding of the effect Plaintiffs' filing an amended complaint had on InterBank's deadline to file a motion under Rule 12(b)(6).

Rule 12(b)(6) provides that "[a] motion asserting [failure to state a claim upon which relief may be granted] must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b)(6).  A motion seeking dismissal under Rule 12(b)(6) filed after a responsive pleading, such as an answer, is untimely filed.  *See*, *e.g.*, *Allen v. Wells Fargo Bank, Nat'l Assoc*, No. 3:16-CV-0249-D, 2017 WL 3421067, at *2 (N.D. Tex. Aug. 9, 2017).  In such instances, the court may treat the improperly filed Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings.  *Id*; *Jackson v. Fed. Express Corp.*, No. 3:03-CV-2341-D, 2006 WL 680471, at *13 (N.D. Tex. Mar. 14, 2006) (finding untimely and construing as a Rule 12(c) motion defendant's Rule 12(b)(6) motion filed after he answered plaintiff's first amended complaint).

Here, the Court granted Plaintiffs leave to file their First Amended Complaint (Dkt. No. 30), which they eventually did on June 16, 2020. Dkt. No. 65. InterBank's answer or other response to that First Amended Complaint was then due within the time remaining for a response to the initial pleading "or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3). This meant that InterBank's motion under Rule 12(b)(6) was due by June 30, 2020, which is when it was filed. Thus, that motion is timely and properly before this Court.

## III.   LEGAL STANDARDS

### A.   Basis for Federal Jurisdiction

Federal courts may exercise diversity jurisdiction over a civil action between citizens of different States if the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). The Court retains jurisdiction over this action because Plaintiffs are citizens of Texas, InterBank is an Oklahoma corporation, and the amount in controversy exceeds $75,000. *See* Dkt. No. 1. Venue is proper in the San Angelo division of this Court because a substantial part of the events or omissions giving rise to the claims asserted occurred in Coleman County, which lies in that division.

Federal courts apply state substantive law "when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991).

### B.   Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

Rule 12(b)(6) authorizes the dismissal of a plaintiff's claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, pleadings must demonstrate specific, well-pleaded facts, not merely conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The Court must accept those well-pleaded allegations

as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A]s a general matter, the Fifth Circuit has determined that Rule 12(b)(6) motions to dismiss typically cannot be granted on affirmative defense grounds unless a successful affirmative defense appears clearly on the face of the pleadings." *Estate of Barré v. Carter*, 272 F. Supp. 3d 906, 930 (E.D. La. 2017) (citation and internal quotation marks omitted). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged by Plaintiffs must "raise a right to relief above the speculative level." *Id.* at 555. While a plaintiff need not detail specific factual allegations, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "the tenet that a court must accept as true all of the allegations in the compliant is inapplicable to legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The United States Supreme Court remarked in *Iqbal* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citations omitted). In sum, when plaintiffs "have not

nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

C.   Motion for Judgment on the Pleadings Under Rule 12(c)

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c).  The Fifth Circuit has noted that a Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citations omitted) (internal quotation marks omitted).

Dismissal on the pleadings under Rule 12(c) is governed by the same standard for dismissal for failure to state a claim under Rule 12(b)(6).  *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).  "The court reviews motions for judgment on the pleadings solely on the basis of the allegations in the pleadings and accepts all allegations as true." *Fu v. Reno*, 3:99-CV-0981-L, 2000 WL 1644490, at *5 (N.D. Tex. Nov. 1, 2000) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

D.   Motion for a More Definite Statement Under Rule 12(e)

Rule 12(e) authorizes a party to "move for a more definite statement of a pleading" before interposing a responsive pleading if a pleading to which a responsive pleading is permitted is "so vague or ambiguous" that a party cannot reasonably be required to frame a responsive pleading. Fed. R. Civ. P. 12(e).  A motion for a more definite statement "must point out the defects complained of and the details desired." *Id*.  Motions for more definite statements are generally disfavored because of the liberal pleading standards provided by Rule 8.  *Mitchell v. E-Z Way*

9

*Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959); *accord Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 653–54 (N.D. Tex. 2004).

The liberal standards provided by Rule 8(a) require only that a complaint provide a short and plain statement of the claim showing that the plaintiff is entitled to relief, and that the complaint either: "(1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Gen. Star Indem. Co. v. Vesta Fire Ins. Co.*, 173 F.3d 946, 950 (5th Cir. 1999); *see also* Fed. R. Civ. P. 8(a).

"If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e)." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). However, "[w]hen a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-CV-1790-D, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (quoting *Brown v. Whitcraft*, No. 3:08-CV-0186-D, 2008 WL 2066929, at *1 (N.D. Tex. May 15, 2008)).

## IV.  DISCUSSION AND ANALYSIS

The undersigned, at the outset, addresses two preliminary matters, both of which relate to the scope of the factual allegations and claims that are properly before the Court for consideration.

A.  <u>Plaintiffs' newly raised factual allegations in their response do not amend their pleadings.</u>

Plaintiffs' response to InterBank's Second Motion to Dismiss raises, for the first time, several additional factual allegations absent from Plaintiffs' First Amended Complaint (Dkt. No.

65), the live pleading in this case. *Compare* Dkt. No. 65 *with* Dkt. No. 77. InterBank, in its Reply, urges the Court to refrain from considering these new factual allegations in support of their claims.

When ruling on a motion to dismiss under Rule 12(b)(6), a court generally may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 289 (5th Cir. 2006) (affirming a district court's refusal to consider facts not pleaded within plaintiff's second amended complaint, and noting that, "in reviewing a Rule 12(b)(6) dismissal, we review only the well-pleaded facts in the complaint.") When a court does look beyond the pleadings in ruling on a motion brought under Rule 12(b)(6) or Rule 12(c), Rule 12(d) applies, stating that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In doing so, all parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion. *Id*.

InterBank did not present to the Court any matters outside the pleadings in support of its Rule 12(b)(6) and 12(c) motions. Plaintiffs, through their response, attached nearly fifty pages of exhibits in support of their opposition to InterBank's Motions. *See* Dkt. Nos. 77-1, 77-2. The undersigned has not considered these matters raised outside the pleadings, so there is no basis for converting InterBank's motion to dismiss as a motion for summary judgment in accordance with Rule 12(d).

Nor is there a basis for construing Plaintiffs new factual allegations raised in their Response as an attempt to supplement the factual allegations pleaded in their First Amended Complaint or to amend their First Amended Complaint.

11

As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n.3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the court) citing *Fisher v. Metro. Live Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990))). Nevertheless, the Fifth Circuit has held that district courts may construe new allegations and theories in responses to dispositive motions as motions for leave to amend, thus providing the court a path to consider the new allegations. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend); *accord Hilgers v. VIP Moving & Storage Inc.*, No. 3:19-CV-1472-S , 2020 WL 7059589, *4 (N.D. Tex. Dec. 2, 2020) (citing *Cash* and construing plaintiff's claim for conversion, raised for the first time in a response to defendant's Rule 12(b)(6) motion, as a motion to amend).

Rule 15 of the Federal Rules of Civil Procedure governs the supplementation and amendment of pleadings in federal court. When a party seeks leave to serve a supplemental pleading, Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Whether to grant a motion to supplement is within the discretion of the district court. *State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1302–03 (5th Cir. 1995). And Rule 15(a)(2) provides, in pertinent part, that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But "[w]hile the text of Rule 15(a) provides that leave should

be freely granted, the text of Rule 15(d) does not similarly provide. Rule 15(d) is clear that the court *may* permit a supplemental pleading setting forth changed circumstances." *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 880, 882 (N.D. Tex. 2008) (quoting *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998) (emphasis in original)).

In determining whether to allow a supplementation of pleadings, a court may consider the same factors as when deciding a Rule 15(a) motion to amend pleadings. *DT Apartment Grp., LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2012 WL 4740488, at *2 (N.D. Tex. Oct. 3, 2012); *Hyde v. Hoffman-La Roche Inc.*, No. 3:04-CV-1473-B, 2008 2923818, at *3 (N.D. Tex. July 30, 2008) (applying factors when considering supplementation of pleadings under Rule 15(d)). These factors include considerations of "undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] the futility of amendment." *Schiller v. Phys. Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted) (emphasis added).

A consideration of the above factors leads the undersigned to conclude that Plaintiffs should not be permitted to either supplement or amend their First Amended Complaint through their response to InterBank's Rule 12(b)(6) motion. As the Court explains above, Plaintiffs attempted to amend their complaint on four separate occasions. This series of attempts at amendment constitute a repeated failure on Plaintiffs' parts to cure deficiencies in either the form or substance of those attempts. The undersigned further concludes that permitting Plaintiffs to raise new allegations in response to a Rule 12(b)(6) motion would unduly prejudice InterBank, which has already filed two separate motions to dismiss under Rule 12(b)(6) in response to Plaintiffs' vacillating allegations. Moreover, Plaintiffs offer no attempt to explain their delay in raising the

13

new factual allegations until now.  Finally, and most obviously, Plaintiffs did not file a motion seeking leave of court to supplement or amend their First Amended Complaint.

For these reasons, the undersigned declines to construe the Plaintiffs' new factual allegations as a motion for leave to supplement or amend their First Amended Complaint or otherwise expand the factual basis underpinning their causes of action.

B.  Plaintiffs properly incorporate by reference the allegations in their state court petition.

InterBank submits that Plaintiffs' wholesale incorporation by reference of their state court petition into their First Amended Complaint violates the Federal Rules of Civil Procedure and fails to give adequate or fair notice to InterBank of Plaintiffs' causes of action.  The undersigned disagrees.

It is well-settled that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Furthermore, Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).

Here, throughout Plaintiffs' First Amended Complaint, Dkt. No. 65, Plaintiffs repeat the phrase that they "incorporat[e] by reference *all the causes of action* alleged in Plaintiff's Original Petition ('State Action') as if repeated verbatim and annexed herein per Exhibit A[.]" Dkt. No. 65 at 1, 5–13 (emphasis added).  And Plaintiffs not only reference their state court petition, but they attached it to their First Amended Complaint as an exhibit as allowed by Rule 10(c).

Plaintiff Roger Middaugh's original state court petition specifically alleged only three causes of action:  abuse of process, *quantum meruit,* and quiet title.  Dkt. No. 1-4 at 7–9.  Through the factual allegations in that state court petition, however, he purported to allege additional claims

for libel, slander, defamation, wrongful/illegal foreclosure, breach of contract, intentional infliction of emotional distress, fraud, and violations of state and federal "consumer collections laws." Dkt. No. 1-4 at 4–7, 10–15.

In contrast, Plaintiffs' First Amended Complaint in this Court alleges causes of action of breach of contract, duress, fraud, theft and conversion, unjust enrichment, breach of trust, negligent misrepresentation, intentional infliction of emotional distress, and extreme and outrageous conduct.[4] Dkt. No. 65. Therefore, the effect of Plaintiffs' incorporation by reference of their state court petition is to add to their federal complaint their claims for abuse of process, *quantum meruit,* quiet title, libel, slander, defamation, wrongful/illegal foreclosure, or violations of state or federal "consumer collection laws." *Id.* Therefore, these claims are properly before this Court for a determination of whether Plaintiffs have stated claims upon which relief can be granted as to each.

Accordingly, for the reasons explained above, the undersigned finds that the claims properly before this Court for purposes of InterBank's Motions are the following: (1) breach of contract, (2) duress, (3) fraud, (4) theft and conversion, (5) unjust enrichment, (6) breach of trust, (7) negligent misrepresentation, (8) intentional infliction of emotional distress, (9) abuse of process, (10) *quantum meruit,* (11) quiet title, (12) libel, (13) slander, (14) defamation, (15) wrongful foreclosure, and (16) violations of state and federal "consumer collection laws."

The Court addresses each claim in turn below.

---

[4] Through their Response to InterBank's Motion to Dismiss, Plaintiffs appear to have abandoned their claim of extreme and outrageous conduct. *See* Dkt. No. 77 at 28.

C. Analysis of InterBank's Motions and Plaintiffs' Claims

**(1) Plaintiffs' breach of contract claims**

The factual bases for Plaintiffs' breach of contract claims appear threefold. First, Plaintiffs plead that, in 2010, InterBank breached the underlying contract upon which the mortgage notes were based when InterBank "suddenly decided to change the terms of the mortgages and pressured Plaintiff [Roger Middaugh] to sign a single note cross-collateralizing all the mortgages and adding balloon provisions on the approximately 86 properties financed by Defendant[.]" Dkt. No. 65 at 2. Plaintiffs allege that "[t]his singular act was a clear breach of the terms of the notes." *Id*. Relatedly, Plaintiffs also claim that InterBank wrongfully retained $1,586,000 in "working capital" that was due to Plaintiffs as part of the 2010 note transaction. *Id*. at 3.

Second, Plaintiffs claim that "the loan churning, harassment, tortious interference and abuse of process commenced" and "Defendant would have the notes renewed every couple of years." *Id*.

Third, and finally, Plaintiffs claim that InterBank's conduct in relation to the more recent 2019 non-judicial foreclosure and sale of Plaintiffs' property constitutes a breach of contract. Dkt. No. 65-1 at 5-8.

The Court addresses each of these alleged breaches of contract in turn.

a. Plaintiffs' breach of contract claim related to the 2010 cross-collateralizing note transaction is barred by the statute of limitations.

InterBank moves to dismiss Plaintiffs' breach of contract claim on the basis that it is barred by the applicable statute of limitations, contending that "by Plaintiffs' own admission, any alleged breach of contract occurred in 2010, some nine years prior to the commencement of this suit." Dkt. 76 at 14. The undersigned agrees that the applicable statute of limitations, discussed below,

16

bars Plaintiffs' breach of contract claims arising from the 2010 note transaction. However, Plaintiffs claim entitlement to several equitable doctrines to avoid this result.

### i.    Statute of Limitations

"[T]he question of when a cause of action accrues is a matter of law for the court to decide." *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 355 (5th Cir. 2008) (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566–67 (Tex. 2001)). Under Texas law, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). This "legal injury" rule is defined as an injury that gives rise to a cause of action "by reason of its being an invasion of a plaintiff's right." *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (citation omitted). "A cause of action for breach of contract is generally regarded as accruing when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach." *Slusser v. Union Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App.—Eastland 2002, no pet.).

In diversity cases such as this, federal courts are to apply the Texas statute of limitations, along with any accompanying rules regarding tolling. *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1145 (5th Cir. 1997). Texas law imposes a four-year statute of limitations to assert a breach of contract claim. Tex. Civ. Prac. & Rem. Code § 16.051.

In their First Amended Complaint, Plaintiffs admit that their breach of contract claim is based on the 2010 note transaction. The undersigned finds that Plaintiff Roger Middaugh's signing of the 2010 cross-collateralizing note, which he claims materially altered the terms of the existing notes, should have – at the very least – provided Plaintiff with "facts sufficient to place him on notice of the breach." *Slusser*, 72 S.W.3d at 717. Indeed, Plaintiffs state in their First Amended

Complaint that "[t]his singular act was a *clear* breach of the terms of the notes." (emphasis added). Dkt. No. 65 at 2.

Because the undersigned finds that Plaintiffs were on notice in 2010 regarding any breach, Plaintiffs' breach of contract claim arising out of the 2010 note transaction accrued in 2010 when the alleged breach occurred, and the statute of limitations provided by Texas law expired in 2014. Plaintiffs did not bring suit until 2019. Thus, Plaintiffs' claim for breach of contract related to the 2010 note transaction is barred by the applicable statute of limitations absent any deferral of accruement or tolling of the limitations period.

## ii. Equitable Tolling

Plaintiffs purportedly raise several equitable arguments addressing the timeliness of their claims. Plaintiffs' Response to InterBank's Rule 12(b)(6) motion contends that the discovery rule, the fraudulent concealment doctrine, the continuing violations doctrine, and the continuing trespass doctrine, or some combination of these equitable doctrines, applies to each of their asserted claims, thereby deferring accrual or otherwise tolling the applicable statute of limitations. InterBank essentially contends that it is evident that Plaintiffs' claims are time-barred from the face of their First Amended Complaint.

Plaintiffs do not raise these equitable arguments in their First Amended Complaint, but rather assert them for the first time in their Response to InterBank's Rule 12(b)(6) motion. InterBank, through its Reply, "vehemently refutes" that Plaintiffs may raise their equitable tolling arguments in their Response for the first time, and argues, in effect, that Plaintiffs' equitable tolling arguments are waived because they did not plead them in their First Amended Complaint. Dkt. No. 78 at 5. InterBank provides no authority for this position and the undersigned can find none.

The question is whether Plaintiffs pleaded "sufficient facts to put the defense on notice of the theories on which the complaint is based." *TIG Ins. Co.*, 521 F.3d at 357 (citations omitted). Although *TIG* involved the application of the discovery rule, the undersigned is persuaded that the rule announced therein should be equally applicable to other equitable tolling arguments and is consistent with Rule 8's notice pleading. *Id.* The undersigned ultimately concludes that Plaintiffs failed to plead sufficient facts to put InterBank on notice that they intended to rely on these equitable doctrines. Nevertheless, for the reasons below, even if the Court were to assume Plaintiffs properly pleaded these doctrines, they would not change the outcome.

Each of the equitable doctrines invoked by Plaintiffs share a common equitable purpose. They are limited exceptions applied to save those who have suffered a legal injury from having their rights arising from that injury barred by the passage of time, provided they neither knew of the injury, nor could have known of it through the exercise of reasonable diligence. *See*, *e.g.*, *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885–88 (Tex. 1986) (discovery rule); *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229–231 (Tex. 2015) (fraudulent concealment doctrine); *Texas v. United States*, 891 F.3d 553, 561–564 (5th Cir. 2018) (continuing violations doctrine).

The main thrust of equitable tolling is "to encourage the plaintiff to 'pursu[e] his rights diligently,'" and to provide relief from the applicable limitations period "when an '*extraordinary* circumstance prevents him from bringing a timely action.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014) (emphasis added) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014).

Here, Plaintiffs do not claim that they could not or did not discover the "legal injury" for the basis of their claims against InterBank arising from the 2010 note transaction. To the contrary, Plaintiffs' First Amended Complaint states that, in 2010, "Defendant suddenly decided to change the terms of the mortgages and pressured Plaintiff to sign a single note cross-collateralizing all the

19

mortgages and adding balloon provisions . . . threatening that the notes would be called if Plaintiff did not cooperate." Dkt. No. 65 at 2. And that "[t]his singular act was a clear breach of the terms of the notes" and "was a classic bait." *Id.* In their response to InterBank's Motions, Plaintiffs claim that the only reason Plaintiff Roger Middaugh signed the cross-collateralized note in 2010 was because he felt then that he had "no other option." Dkt. No. 77 at 10. This strongly suggests that he was aware of his legal injury as of that time.

While the Court must accept Plaintiffs factual allegations as true and view those facts in the light most favorable to them, it is not required to ignore facts that do not favor them. Here, the undersigned finds that Plaintiff Roger Middaugh either knew or should have known in 2010 that he did have an option other than acquiescence if he believed the 2010 note transaction somehow violated his legal rights, i.e., he could have pursued legal remedies at that time.

Likewise, Plaintiffs failed to allege facts sufficient to support their claim of fraudulent concealment as it relates to the 2010 note transaction. Similar to the other equitable doctrines above, "fraudulent concealment is a fact-specific [] doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Valdez*, 465 S.W.3d at 229. "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make injury, which, if pursued, would lead to discovery of the concealed cause of action." *Colonial Penn Ins. Co. v. Market Planners Ins. Agency, Inc*., 1 F.3d 374, 377 (5th Cir. 1993) (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983)). As observed above, Plaintiffs admitted to knowing that the signing of the cross-collateralizing note in 2010 served as the "singular act [that] was a clear breach of the terms of the notes." Dkt. No. 65 at 2. In 2010, then, as of the cross-collateralizing note and subsequent so-called "structuring" through smaller notes, Plaintiffs were aware of sufficient facts, conditions,

20

and circumstances that would have caused a reasonable prudent person to inquire further, and yet they sat on those facts for nearly nine years before pursuing their breach of contract claim.

Although Plaintiffs suggest the applicability of the continuing violations doctrine, they acknowledge that this doctrine is typically applied in the context of employment related claims, and they cite no authority for the extension of either that doctrine or the continuing trespass doctrine to contractual disputes.[5]  Dkt. No. 77 at 11.

For the above reasons, the undersigned finds no factual basis to support a conclusion that Plaintiffs diligently pursued their legal rights in connection with the 2010 note transaction and yet some extraordinary circumstance prevented them from bringing a timely action thereon.  The party invoking equitable tolling bears the burden of demonstrating that it applies in his case.  *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003).  Here, the Plaintiffs failed to carry that burden with regard to any of the equitable tolling doctrines they invoked in connection with this claim.

Accordingly, Plaintiffs' claim for breach of contract as it relates to the 2010 note transaction should be dismissed with prejudice under Rule 12(b)(6) as barred by the four-year statute of limitations provided by Texas law.

b.  <u>Plaintiffs' allegations related to the unspecified renewal of the notes fail to state a claim for breach of contract.</u>

The sum of Plaintiffs' factual allegations in support of this claim appears on page 3 of their First Amended Complaint following their description of the 2007 insurance claim and the 2010 note transaction:  "Thereafter, the loan churning, harassment, tortious interference and abuse of

---

[5] In their 12(b)(6) Response, Plaintiffs devote a single sentence to this doctrine and cite only to one decision from the Supreme Court of Maine, *Hearne v. Hearne*, 55 Me. 445 (Me. 1868), which Plaintiffs incorrectly identify as "*State v. Coombs*" in their briefing.

process commenced.  Defendant would have the notes renewed every couple of years." Dkt. No. 65 at 3.

Even accepting these threadbare allegations as true and viewing them in a light most favorable to Plaintiffs, they still fail to constitute "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.  While detailed factual allegations are not required at this stage, as explained above, there must be more than a sheer possibility that a defendant acted unlawfully.  *Iqbal*, 556 U.S. at 678.  Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." *Id.* (citations and internal quotations omitted).

Here, after multiple attempts to amend their complaint, Plaintiffs "have not nudged their claims across the line from conceivable to plausible, [and] their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.  Vague references to the renewal of unspecified notes every couple of years does not state a plausible claim even when coupled with legally charged terms like "loan churning, harassment, tortious interference and abuse of process." While the combination of these phrases suggests the possibility that InterBank acted unlawfully, they do not make it plausible.  For these reasons, Plaintiffs have failed to state a breach of contract claim with regard to the renewal of notes every couple of years and that claim should be dismissed with prejudice under Rule 12(b)(6).

c.  Plaintiffs' breach of contract claim related to 2019 non-judicial foreclosure and sale of Plaintiffs' property are not barred by the statute of limitations.

Plaintiffs appear to allege through the incorporation of their state court petition (*see* Dkt. No. 65-1 at 5-8) that InterBank's conduct in relation to the more recent 2019 non-judicial foreclosure and sale of Plaintiffs' property constitutes a breach of contract.  To this extent,

22

Plaintiffs appear to state a claim that is not barred by the four-year statute of limitations. Therefore, InterBank's Rule 12(b)(6) motion to dismiss as it pertains to a 2019 breach of contract claim should be denied.

**(2) Plaintiffs' claims for duress are barred by the statute of limitations and/or fails to state a claim.**

Plaintiffs next allege a claim for duress on the ground that InterBank pressured Plaintiff Roger Middaugh to sign the 2010 note cross-collateralizing existing mortgages by threatening to call in the notes if he did not cooperate.[6] Dkt. No. 65 at 7. InterBank contends that Plaintiffs' claim is barred by the applicable statute of limitations. The undersigned agrees. However, in their Response to InterBank's Rule 12(b)(6) motion, Plaintiffs attempt to expand on this claim by stating that "the duress was actively propounded against Plaintiffs from 2010 up until the present date; most notably in June 2019, when Defendant wrongfully attempted to foreclose on Plaintiffs' properties." Dkt. No. 77 at 16, 25. InterBank does not directly address this latter claim, but for the reasons explained below, this claim should be dismissed sua sponte for failure to state a claim. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006).

a.  Plaintiffs duress claim related to 2010 note transaction fails to state a claim.

The tort of economic distress in Texas has three elements: "(1) there is a threat to do something which a party threatening has no legal right to do; (2) there is some illegal exaction or some fraud or deception; and (3) the restraint is imminent and such as to destroy free agency without present means of protection." *Lee v. Wal-Mart Stores, Inc.*, 34 F.3d 285, 288 (5th Cir. 1994) (internal quotation marks and citation omitted).

---

[6] Elsewhere, Plaintiffs claim the 2010 note transaction was procured by fraud. *See* Dkt. No. 65 at 7, discussed below.

Plaintiffs' claim for duress related to the 2010 note transaction is brief. Plaintiffs merely state in their First Amended Complaint that "Plaintiff's cooperation in the 2010 transaction was procured through duress because Defendant threatened to call in the notes, which still had three years to mature, if Plaintiff did not sign the 2010 Note." Dkt. No. 65 at 7.

Critical to resolving whether Plaintiffs state a claim for duress is whether they claim InterBank, by allegedly threatening to call the notes if a new cross-collateralizing note was not executed by Plaintiffs, had no right to call those notes in the first place. Plaintiffs' pleadings on this point are quite thin. They simply allege that "Plaintiff diligently serviced the mortgages and was paying approximately $25,000.00 per month on the notes." Dkt. No. 65 at 2. What they do not state is what amount was actually owed each month or whether they were current on those notes or in arrears.

Nevertheless, accepting as true their allegation that they were "diligently servic[ing] the mortgages" and construing that allegation in the light most favorable to Plaintiffs, the undersigned finds that this allegation states a plausible claim that InterBank was demanding a renegotiation of the then-existing valid mortgages by illegally threatening to do that which it had no legal right to do (i.e., call the notes). For this reason, Plaintiffs appear to satisfy the first two elements required for duress.

However, assuming the above to be true, Plaintiffs fail to allege any facts to show why or how they were restrained to the point of losing their free agency from seeking then available legal protections to prevent the alleged illegal action by InterBank. In other words, they fail to allege why, given the above, they did not then file suit or otherwise seek to protect their legal rights from InterBank's alleged wrongful actions. For this reason, Plaintiffs' claim for duress as it relates to the 2010 note transaction should be dismissed with prejudice for failure to state a claim.

b. <u>Alternatively, Plaintiffs' duress claim relating to the 2010 note transaction is barred by the applicable statute of limitations.</u>

Even if the Court were to assume that Plaintiffs stated a claim of duress related to the 2010 note transaction, that claim would be time-barred.

i. Statute of Limitations

The question of what constitutes duress is a matter of law, although the question of whether duress exists in a particular situation is generally a question of fact that is dependent upon all the circumstances and the mental effect of the party claiming duress. *Interest of A.J.P.*, 595 S.W.3d 313, 315 (Tex. App.—El Paso 2020, no pet. h.) (citing *Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 719–20 (Tex. App.—El Paso 2011, no pet.)). Although "no specific case or statute dictates whether the statute of limitations for duress two or four years," the Fifth Circuit has determined that "Texas law imposes a two-year statute of limitations on duress claims." *Castillo v. First City Bancorporation of Texas*, *Inc.*, 43 F.3d 953, 962–63 (5th Cir. 1994); *accord Windecker v. Hang Wei*, No. 1:18-CV-00898-LY, 2019 WL 4016455, at *4 (W.D. Tex. Aug. 26, 2019) (applying two year statute of limitations to plaintiff's claim for economic duress).

Assuming without deciding that Plaintiffs have properly stated a claim for duress in connection with the signing of the 2010 note, the undersigned finds persuasive InterBank's citation to the basic principle under Texas law that the statute of limitations period is tolled while the duress remains ongoing, but the statute begins to run upon removal of the duress. *See*, *e.g.*, *Doe*, 362 S.W.3d at 719. It is apparent that, as with Plaintiff Roger Middaugh's signing of the 2010 note, the alleged threats giving rise to Plaintiffs' claim for duress are likewise singular in nature. Presumably, once the parties completed that 2010 note transaction, the alleged threats and pressure from InterBank to secure Plaintiff Roger Middaugh's participation in that transaction ceased. And

25

important to the Court's analysis here, the statute of limitations for Plaintiffs' duress claim began to run at that time. Although Plaintiffs argue that the duress was ongoing, as explained above, they only make this argument in their Response to InterBank's Rule 12(b)(6) motion, not in their First Amended Complaint. And even then they allege no specific facts constituting duress, as opposed to wrongful disclosure or intentional infliction of emotional distress.

Accordingly, the undersigned finds that the duress, for purposes of the accrual date, ceased in 2010. Plaintiffs should have brought their duress claim no later than 2012, two years after InterBank allegedly pressured Plaintiff Roger Middaugh to sign the 2010 note.

### ii. Equitable Tolling

Plaintiffs' reliance on the discovery rule, fraudulent concealment doctrine, and continuing violations doctrine is unavailing. First, the discovery rule is inapplicable here because Plaintiffs "knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action" for duress based on InterBank's alleged threats and pressure for Plaintiff Roger Middaugh to sign the 2010 note. *Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006). Here again, Plaintiffs offer no explanation as to why they could not discover the nature of the injuries alleged until nine years later.

Second, and as noted above, the statute of limitations begins to run once the duress has ceased. *Doe*, 362 S.W.3d at 719. Plaintiffs' First Amended Complaint clearly states that the basis for their claim for duress is rooted in the same transaction and factual allegations as their claim for breach of contract. To the extent that they now argue in their Response that the allege duress persisted to the present day, for the reasons explained below, that argument is neither timely nor adequate. Thus, the undersigned finds no basis to apply the continuing violations doctrine.

Accordingly, Plaintiffs' claims for duress should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim and/or as barred by the two-year statute of limitations provided by Texas law.

c. Plaintiffs' duress claim related to events "up until the present date; most notably in June 2019, when Defendant wrongfully attempted to foreclose on Plaintiffs' properties."

Plaintiffs' attempt to supplement their duress claim through their Response to InterBank's Rule 12(b)(6) motion suffers from two problems. First, and most obvious, it was not sufficiently plead in their First Amended Complaint. And, for the reasons noted above, the undersigned is not inclined to permit Plaintiffs to attempt yet again to amend their complaint through their Response to InterBank's Rule 12(b)(6) motion.

The only statement from Plaintiffs' First Amended Complaint that can be construed in support of a duress claim "up until the present date" is their allegation that, "the loan churning, harassment, tortious interference and abuse of process commenced. Defendant would have the notes renewed every couple of years." Dkt. No. 65 at 3. Even when accepted as true and viewed in a light most favorable to Plaintiffs, this thin allegation fails to state a claim for duress that is plausible on its face. Specifically, it fails to identify the actions by InterBank that allegedly constituted "loan churning, harassment, tortious interference and abuse of process." Nor does it assert the dates of either the allegedly illegal conduct by InterBank or the renewal of the notes. And even if the Court assumes from these allegations that InterBank threatened to do that which it had no legal right to do in furtherance of forcing Plaintiffs to renew notes every couple of years, as with the duress alleged in connection with the 2010 note transaction, they fail to allege why they did not then file suit or otherwise seek to protect their legal rights from InterBank's alleged wrongful actions.

Second, to the extent that Plaintiffs claim through their Response that the duress continued to the present day in the form of InterBank attempting to wrongfully foreclose on Plaintiffs' properties, Plaintiffs fail to allege what action was exacted from them "up to the present; most notably in June 2019" through the alleged duress. The only fact alleged to have occurred in June 2019 was the issuance by InterBank of the Notice of Sale on June 11, 2019. Dkt. No. 65-1 at 5. Even assuming the issuance of the Notice of Sale was improper in some respect, its issuance does not constitute an exaction from Plaintiffs of anything by duress. Nor do Plaintiffs otherwise allege that they were somehow compelled to take some action that they would have not otherwise taken but for an allegedly illegal threat by InterBank. Nor do they allege what action InterBank sought to compel them to perform in connection with the foreclosure and sale that they were not otherwise legally obligated to perform.

It appears that Plaintiffs, through this attempted expansion of their duress claim to events of "up to the present; most notably in June 2019," conflate their allegations of duress with their allegations of wrongful foreclosure and/or intentional infliction of emotional distress. For this reason, the undersigned finds that the only factual basis pleaded for Plaintiffs' duress claim relate solely to the tactics allegedly employed by InterBank to compel Plaintiff Roger Middaugh to sign the cross-collateralizing note in 2010 and for reasons explained above, that claim should be dismissed.

### (3) Plaintiffs' fraud claims should be dismissed as time-barred or for failure to state a claim.

Plaintiffs assert two distinct claims for fraud—one arising from the terms of the 2010 note and another arising from documentation relating to fraud by forgery in connection with InterBank's efforts to foreclose on the underlying properties in 2019.

Fraud under Texas law is a "material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 272 (5th Cir. 2012) (quoting *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994)). "[A] contract may be induced by fraud when a party promises to perform the contract while knowing that it has no intention of carrying out the promise." *Id.* at 278 (quoting *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999)).

Federal Rule of Civil Procedure 9(b) imposes heightened pleading standards on claims for fraud, requiring that the pleading party "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit has clarified that a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income, Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citations omitted). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" when a party seeks to assert a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). While the heightened pleading standards demanded by Rule 9(b) may be relaxed where the facts relating to the alleged fraud are peculiarly within the knowledge of the opposing party, this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

The undersigned examines below both fraud claims within the context of Rule 9(b)'s pleading standards.

a.  <u>Plaintiffs' fraud claims arising from alleged events in 2010 are time-barred.</u>

Plaintiffs broadly claim that the 2010 note "was procured by fraud."  Dkt. No. 65 at 7.

Plaintiffs appear to allege that this fraud was perpetrated in two steps.  First, they allege that in

2010 InterBank "suddenly decided to change the terms of the mortgages" and pressured Plaintiff

Roger Middaugh "to sign a single note cross-collateralizing all the mortgages and adding balloon

provisions . . . threatening that the notes would be called if Plaintiff did not cooperate."  Dkt. No.

65 at 2.  As discussed above, Plaintiffs appear to argue that this first step was accomplished through

duress, i.e., by threatening to call the previous notes if Plaintiff Roger Middaugh did not agree to

the 2010 cross-collateralizing note.

Through their fraud claim, Plaintiffs also appear to allege that in addition to the duress,

InterBank misrepresented to Plaintiff Roger Middaugh that the amount of the new cross-

collateralized note was within InterBank's federal lending limit when it was not.  *Id*. at 3, 7–8.

Shortly after execution of this note, Plaintiffs allege, InterBank fraudulently persuaded Plaintiff

Roger Middaugh to replace the larger single cross-collateralizing note with several smaller notes.

*Id*. at 7.

Second, Plaintiffs allege that shortly after the execution by the parties of the 2010 cross-

collateralizing note, InterBank represented to Plaintiff Roger Middaugh that the 2010 note would

provide a $1,600,00.00 lending limit, but that InterBank "knew that the $1,600,00.00 refinancing

was above [InterBank's] federal lending limit" and that InterBank nevertheless "proceeded with

the transaction to get hold of all [Plaintiff's] properties in one swoop through cross-

collateralization of the notes."  *Id*.

InterBank urges the Court to dismiss Plaintiffs' fraud claim as barred by the statute of

limitations. The undersigned agrees that Plaintiffs' 2010 fraud claim is time-barred, and further

concludes that Plaintiffs' factual allegations regarding the 2010 fraud fail to state a claim even before the Court applies Rule 9(b)'s heightened pleading standards.

Assuming the above alleged facts as true and construing them in a light most favorable to Plaintiffs, Plaintiffs fail to allege, as required by Texas law, how the alleged misrepresentation by InterBank regarding its lending limit, if made and known by InterBank to be false when made, was either material or relied upon by Plaintiffs in agreeing to the terms of the cross-collateralized note. Nor do Plaintiffs demonstrate how this alleged misrepresentation caused them injury beyond what would have been caused had it not been made and the parties had executed the smaller notes from the outset. In other words, they fail to specifically allege the "who, what, when, where, and how" required when pleading a fraud claim. *Benchmark Elecs., Inc.*, 343 F.3d at 724. For these reasons, Plaintiffs have failed to state a claim for fraud in connection with the 2010 note transaction.

i.  Statute of Limitations

Even assuming that Plaintiffs validly state a claim for fraud consistent with Texas law, and further assuming that they pleaded such a claim with the required specificity demanded by Rule 9(b), the undersigned concludes that Plaintiffs' claim for fraud related to the 2010 note transaction is barred by the statute of limitations.

Under Texas law, the statute of limitations period for fraud is four years from the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4). A claim for fraud accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V.*, 933 S.W.2d at 4. "Knowledge of facts which would have excited inquiry into the mind of a reasonably prudent person, which, if pursued by him with reasonable diligence, would lead to the discovery of the fraud, is equivalent

to knowledge of the fraud as a matter of law." *McMeens v. Pease*, 878 S.W.2d 185, 188 (Tex. App.—Corpus Christi 1994, writ denied).

Here, though the specific timeline is not made clear by Plaintiffs, their First Amended Complaint states that "[s]hortly [after the 2010 note transaction], Plaintiff was called in and told by Defendant that the $1,600,000.00 new 'working capital' was outside Defendant's lending limit" and that "Plaintiff believe[s] that Defendant knew all along that the $1,600,000.00 new loan would be in violation of the applicable rules and regulations but went ahead with the scheme in their inordinate goal to gain access on all Plaintiff's properties in one swoop through cross-collateralization[.]" Dkt. No. 65 at 3.

Based on the facts alleged in their First Amended Complaint, Plaintiffs' claim for fraud accrued in 2010 when InterBank informed Plaintiff Roger Middaugh that the $1,600,000.00 in "new working capital" was outside InterBank's lending limit. Now, approximately nine years after Plaintiffs' receipt of such information, Plaintiffs attempt to pursue legal remedies with respect to this cause of action. But the time for Plaintiffs to bring such a claim has long passed. Plaintiffs should have brought such a claim no later than 2014.

Therefore, Plaintiffs' claim for fraud in connection with 2010 note transaction is barred by the applicable four-year statute of limitations unless equitable tolling applies.

## ii. Equitable Tolling

Plaintiffs claim that equitable tolling should apply to their claims for fraud under the discovery rule, fraudulent concealment doctrine, and the continuing violations doctrine. But such arguments, similar to those made by Plaintiffs regarding other claims, are unavailing.

First, while courts have held that the discovery rule applies to fraud, it nevertheless "requires a plaintiff to seek information about his injuries and their likely cause once he is apprised

of facts that would make a reasonably diligent person seek information." *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The undersigned finds that the discovery rule does not apply to Plaintiffs' claim for fraud regarding the 2010 note transaction because, sometime shortly after signing the 2010 note, InterBank informed Plaintiff Roger Middaugh that the $1,600,000.00 "new working capital" was outside InterBank's lending limit. Upon receiving this information, Plaintiff lost the ability to claim now that their cause of action for fraud premised on these facts was "inherently undiscoverable." *Barker*, 213 S.W.3d at 311–12.

Second, "fraudulent concealment only applies where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs." *Romaine v. Charter Med. Corp.*, 144 F.3d 1183, *1 (5th Cir. 1997) (citing *Borderlon*, 661 S.W.2d at 908). Plaintiffs fail to allege facts to support their assertion that the fraudulent concealment doctrine applies. Moreover, Plaintiffs offer no explanation for their lack of diligence in pursuing this cause of action in the nine years between the alleged harm and the filing of this lawsuit, despite being aware of the alleged harm when it occurred in 2010. *See Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008) (fraudulent concealment does not bar the statute of limitations "when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence").

Third, as with many claims advanced by Plaintiffs, the claim for fraud with respect to the terms of the 2010 note transaction is seemingly based upon a singular event. The undersigned therefore finds that the continuing violations doctrine and continuing trespass doctrine do not apply, and Plaintiffs offer no set of facts that would lead the undersigned to conclude otherwise.

33

Accordingly, Plaintiffs' claim for fraud concerning the 2010 note transaction should be dismissed with prejudice under Rule 12(b)(6) as barred by the two-year statute of limitations provided by Texas law.

b. Plaintiffs' fraud-forgery claim fails to satisfy Federal Rule of Civil Procedure 9(b).

Plaintiffs, through their First Amended Complaint, make the following additional allegations concerning alleged fraud in the form of forged signatures that allegedly occurred as recently as 2018 or 2019 leading up to and during the commencement of foreclosure proceedings by InterBank:

> Upon information and belief, Defendant also engaged in forgery in the foreclosure. The deed of trust provided to the Court for notice of default and acceleration of the foreclosures was for the $1,600,000.00 Note which matured in 2013. However, the signature block for the accompanying notes were forged by Defendant. Neither Plaintiff, nor any representative of Plaintiff, was anywhere near Coleman when the notes presented for the foreclosures were purportedly signed [by] Plaintiff. Plaintiff believes that such was the case with other documents.

Dkt. No. 65 at 4, 8.

Plaintiffs' allegation of forgery is appropriately characterized as a claim for fraud and is governed by the heightened pleading standards provided by Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). The Fifth Circuit has explained that "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

InterBank does not directly address Plaintiffs' claim concerning forged signatures on foreclosure documents in its Rule 12(b)(6) motion, although they generally argue that Plaintiffs' claims should be dismissed or replead through a more definite statement because of their unclear

34

and ambiguous nature. This Court may dismiss a case under Rule 12(b)(6) for failure to state a claim even on grounds that InterBank does not raise, and "the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair." *Coates v. Heartland Wireless Communications, Inc.*, 55 F. Supp. 2d 628, 633 (N.D. Tex. 1999) (citing 5A Charles Alan Wright & Miller, *Federal Practice and Procedure*, § 1357, at 301 (2d ed. 1990)).

As previously explained in Section IV.A, the undersigned only looks to the pleadings with respect to Plaintiffs' claim for fraud by forgery and declines to supplement their pleadings by looking at Exhibit Set A attached to Plaintiffs' 12(b)(6) Response, which they submit contains foreclosure documents with fraudulent signatures. *See* Dkt. No. 77 at 11.

Although not clearly stated, the Court infers from Plaintiffs' First Amended Complaint that Plaintiffs allege that InterBank presented a notice of default in state court at the beginning of the foreclosure proceedings against Plaintiffs and prior to the removal of this action to federal court.

Here, even when taking Plaintiffs' factual allegations concerning the alleged forgery as true, those allegations are conclusory and do not satisfy Rule 9(b)'s heightened pleading standards.

Plaintiffs fail to identify who made this alleged forgery (other than presumably someone with InterBank), how this forgery scheme was carried out, or why the forged signature was made. Nor do Plaintiffs clearly plead when the alleged forgery could have been made. Plaintiffs' account of when InterBank commenced foreclosure proceedings, and thus presented the note containing the alleged forged signature, ranges from March 2019 (Dkt. No. 65 at 4) to June 2019 (Dkt. No. 77 at 17). In sum, the allegations in Plaintiffs' First Amended Complaint, without more, fails to meet the pleading requirements of Rule 9(b) and could be dismissed on that basis alone. *See*

*Bynane v, Bank of N.Y. Mellon for CWMBS*, 866 F.3d 351, 360–61 (5th Cir. 2017) (noting that forgery allegations must meet the pleading requirements of Rule 9(b)).

To the extent Plaintiffs attempt to supplement their fraud-by-forgery allegations through their Response to InterBank's Rule 12(b)(6) motion, those attempts must fail. As explained above, while a party may adopt or incorporate by reference allegations in earlier pleadings under Federal Rule of Civil Procedure 10(c), and the undersigned has given Plaintiffs liberal benefit of that rule, there is no basis for the Court to supplement Plaintiffs' First Amended Complaint with their Response to InterBank's Rule 12(b)(6) motion. This is particularly true given the multiple opportunities Plaintiffs have had to amend their pleadings.

But even if the Court were to consider Plaintiff's Response to InterBank's Rule 12(b)(6) motion as a supplement to their First Amended Complaint, they still fail to satisfy the required heightened pleading standard. Plaintiffs generally allege that InterBank "committed fraud by altering the Mortgage Notes" and that "[o]n September 14, 2018, Defendant changed notes for forged notes." Dkt. No. 77 at 14–15. And then they claim that they "had no reason to suspect fraud and had no proof of fraud until they requested an accounting from the Bank, which occurred on or about July 2019." *Id*. at 14. Assuming these facts to be true, Plaintiffs then were aware of the alleged forgeries at least as early as when they filed their lawsuit, and certainly when they repeatedly attempted to amend their complaint in this Court, and yet they failed to plead that claim until their response to InterBank's Rule 12(b)(6) motion.

Based on the above deficiencies, Plaintiffs' fraud by forgery claim should be dismissed sua sponte for failing to meet the requirements of Rule 9(b). However, if the district judge determines that Plaintiffs have alleged enough facts which, if true, state a facially plausible and non-time-barred claim of fraud by forgery as it pertains to InterBank's foreclosure and sale of Plaintiffs'

properties, the undersigned further recommends that the district judge require Plaintiffs to file a more definite statement under Rule 12(e) that satisfies Rule 9(b)'s heightened pleading standards regarding this claim.

**(4)  Plaintiffs' claims for theft and conversion are barred by the statute of limitations.**

Plaintiffs bring a claim for theft or conversion based on the 2007 insurance claim and the 2010 note transaction.  First, Plaintiffs allege that, at some point in 2007, Plaintiffs received approximately $1,300,000.00 in insurance proceeds to cover repair costs resulting from a 2007 hailstorm that extensively damaged the mortgaged properties.  Dkt. No. 65 at 3, 8–9.  However, Plaintiffs' claim that while "Plaintiff did all the work to repair the damages," "the insurance proceeds went to pockets of the Defendant" (the "2007 insurance claim").  *Id*. at 9.

Second, Plaintiffs claim that InterBank provided Plaintiffs only $14,000.00 of the $1,600,000.00 lending limit created by the 2010 note, "leaving a balance of [$1,586,000.000] which Defendant converted to its use and benefit."  *Id*.  While Plaintiffs pleading is unclear, they seemingly allege that the terms of the 2010 note called for Plaintiffs to receive $1,600,000.00 in either cash, credit, or other form of working capital as part of the consideration for the 2010 restructuring or refinancing of the then-existing mortgages.  And that InterBank's failure or refusal to give Plaintiffs access to anything more than $14,000.00 constituted a conversion of the remainder under Texas law.

In its Rule 12(b)(6) motion, InterBank urges the Court to dismiss Plaintiffs' conversion claims as barred by the statute of limitations, arguing that Plaintiffs were on notice of facts and "understood the consequences" giving rise to their conversion claims in 2007 and 2010, respectively, when InterBank allegedly refused to provide Plaintiffs with an accounting for the

insurance proceeds and failed to return the "leftover" funds from the $1,600,000.00 lending limit. Dkt. No. 76 at 16–17.

"Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386 (Tex. App.—Houston [14th Dist.] 2015, no pet.). "Money is subject to conversion only when it can be identified as a specific chattel and not where an indebtedness may be discharged by the payment of money generally." *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied) (citations omitted). Specifically, "[a]ctions for conversion of money are available in Texas only where 'money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'" *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (quoting *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied)). Insurance-policy proceeds can be the basis for a conversion action. *See Paschal*, 215 S.W.3d at 456.

There are two problems with this claim. First, with respect to the amounts allegedly withheld from the 2010 note, Plaintiffs' conversion claims appear to fail as a matter of law. "When an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate." *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 398 (Tex. App.—Dallas 1988, writ denied). Plaintiffs and InterBank had an established debtor/creditor relationship and InterBank's duties to disburse the funds from the 2010 note arose out of the mortgage contract, not from tort.

Second, Plaintiffs have not alleged that the loan in question was a uniquely identifiable fund that InterBank was required to separate and eventually return to Plaintiff as an intact fund.

Because the alleged error can be discharged by the payment of money generally, the claim appears to fail as a matter of law. *See Eckman*, 757 S.W.2d at 398 (finding that conversion claim failed because construction loan was not a specific fund).

Even if the Court were to assume that Plaintiffs' allegations sufficiently state a claim for conversion, it is clear from the face of Plaintiffs' First Amended Complaint that any such claims arising out of either the 2007 insurance claim or the 2010 note transaction are time-barred.

a.  Statute of Limitations

In Texas, a cause of action accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V.*, 933 S.W.2d at 4. Specifically, for conversion claims, "the general rule is that limitations begin to run at the time of the unlawful taking." *Rogers v. Ricane Enterprises, Inc.*, 930 S.W.2d 157, 166 (Tex. App.—Amarillo 1996, writ denied).

Here, Plaintiffs' conversion claim regarding the disbursement of insurance proceeds accrued in 2007, and their conversion claim regarding the 2010 note lending limit accrued in 2010. Plaintiff filed suit in state court in 2019, and through their First Amended Complaint, attempted to add claims for conversion for the first time. Plaintiffs admit to their awareness that they never received any of the insurance proceeds associated with the hailstorm in 2007. They also admit that InterBank did not lend out more than $14,000 of the $1,600,000 lending limit and, presumably, Plaintiffs were aware of this in 2010. Therefore, Plaintiffs should have brought these claims no later than 2009 and 2012, respectively.

b.  Equitable Tolling

Plaintiffs further lean on the discovery rule, fraudulent concealment doctrine, and the continuing violations doctrine "[f]or conversion actions against Defendant prior to July 2015, (four

years from the filing of the lawsuit)." Dkt. No. 77 at 18. Plaintiffs, in their Response, state that "[t]he first occurrence of conversion was when Defendant attempted to take Plaintiff's properties in 2010 and created documents to take Plaintiff's properties." *Id*. at 17. However, they assert in their First Amended Complaint that an alleged conversion occurred when "the insurance proceeds went to the pockets of the Defendant" after Plaintiff Roger Middaugh's properties were damaged in a 2007 hailstorm. Dkt. No. 65 at 8–9.

Regardless of whether the first alleged act of conversion occurred in 2007 or 2010, the undersigned concludes that the above equitable doctrines do not apply on these facts for the same reasons explained above in connection with Plaintiffs' breach of contract claims. Specifically, the undersigned finds no factual basis to support a conclusion that Plaintiffs diligently pursued their legal rights in connection with either the 2007 insurance claim or the 2010 note transaction. Nor is there a factual basis for concluding that some extraordinary circumstance prevented them from bringing a timely action thereon. As explained above, the party invoking equitable tolling bears the burden of demonstrating that it applies in his case. *See Manning*, 332 F.3d at 880. Here, the Plaintiffs failed to carry that burden as to any of the equitable tolling doctrines they invoked in connection with their conversion claims.

Accordingly, Plaintiffs' conversion claims should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim and as time-barred by the two-year statute of limitations provided by Texas law.

**(5) Plaintiffs' unjust enrichment claims should be dismissed with prejudice.**

Plaintiffs' claims for unjust enrichment are predicated on the same 2007 insurance claim and 2010 note transaction giving rise to their conversion claims. Plaintiffs claim that InterBank unjustly enriched itself through its retention of the insurance proceeds associated with the 2007

insurance claim and most of the $1,600,000.00 lending limit associated with the 2010 note transaction.

    a.   <u>Plaintiffs' unjust enrichment claims either fail to state a claim or are time-barred.</u>

Texas courts recognize unjust enrichment as "an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Villareal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet denied). Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. *Id.* "A party may recover under an unjust enrichment theory when one person has obtained a benefit from another through fraud, duress, or the taking of an undue advantage." *Terra Nova Sciences, LLC v. JOA Oil and Gas Houston, LLC*, 738 F. Supp. 2d 689, 697 (S.D. Tex. 2010) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Texas law provides a two-year statute of limitations for unjust enrichment claims. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W. 732, 737 (Tex. 2001).

Unjust enrichment, similar to claims for *quantum meruit*, as discussed below, is a quasi-contractual claim based on the absence of an express agreement and courts have held that there can be no unjust enrichment claim when there is a binding contract between the parties. *See Cooper v. Gates*, No. 3:16-CV-2630-L, 2017 WL 3209452, at *3 (N.D. Tex. Mar. 7, 2017) (citations omitted). Moreover, Texas law – as noted by this Court and Texas courts alike – does not recognize unjust enrichment as an independent cause of action. *See, e.g.*, *Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 56–61 (N.D. Tex. 2009) (dismissing plaintiff's unjust enrichment claim and holding that it is not an independent cause of action); *Clapper v. American Realty Investors, Inc.*, No. 2019 WL 5865709, at *10–11 (N.D. Tex. Nov. 7, 2019) (same); *Argyle Indep.*

*Sch. Dist. ex rel. Bd. of Trustees v. Wolf*, 234 S.W.3d 229, 246–47 (Tex. App.—Fort Worth 2007, no pet). Nevertheless, courts have permitted plaintiffs to plead quasi-contract claims such as unjust enrichment as an alternative to a breach of contract claim. *See Picard v. Chase Home Fin., LLC*, No. 3:11-CV-439-L, 2011 WL 5333060, at *4 (N.D. Tex. Nov. 3, 2011) (citing *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 704 (S.D. Tex. 2011)).

Here, Plaintiffs' claims for unjust enrichment, like their conversion claims, boil down to their allegation that InterBank withheld most of the $1,600,000.00 working capital provided by the 2010 note transaction and all of the 2007 hailstorm insurance proceeds. First, the undersigned finds that their unjust enrichment claim associated with the 2010 note transaction is barred because an express contract existed between the parties, which Plaintiffs do not dispute. Thus, Plaintiffs appropriate legal remedy in this case does not fall under the purview of a quasi-contract action such as unjust enrichment. Plaintiffs' unjust enrichment claim as it relates to the 2010 note transaction is dismissible under Rule 12(b)(6) on this basis alone.

A different approach is required regarding Plaintiffs' unjust enrichment claim against InterBank for the 2007 insurance proceeds. While the undersigned assumes the existence of an underlying insurance contract governing the rights and responsibilities among Plaintiffs, their insurance company, and InterBank as mortgagee of the insured properties, Plaintiffs' pleadings are silent on this point. Thus, if the Court assumes as true what facts Plaintiffs do plead regarding this claim, and further construes those facts in a light most favorable to Plaintiffs, those facts could perhaps state a plausible claim for unjust enrichment regarding the 2007 insurance proceeds. However, such a claim would be time-barred by two-year statute of limitations provided by Texas law.

Texas follows the "legal injury" test in determining the accrual date for unjust enrichment, which provides that "[a] cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir. 2004) (quoting *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)).

Because Plaintiffs' claims for unjust enrichment arise from the same allegations underpinning their claims for conversion, those accrual facts apply to the unjust enrichment claims as well. *See*, *e.g.*, *Marty's Food & Wine, Inc. v. Starbucks Corp.*, No. 05-01-00008-CV, 2002 WL 31410923, at *8 (Tex. App.—Dallas Oct. 28, 2002, no pet.) (where unjust enrichment claim arises from same allegations of damages to property as other state law tort claims, same accrual date applies); *accord Woodruff v. Henry*, No. A-05-CA-858 LY, 2006 WL 8432899, at *2 (W.D. Tex. May 24, 2006), *report and recommendation adopted*, *Woodruff v. Henry*, No. A-05-CA-858-LY, 2006 WL 8432898 (W.D. Tex. June 21, 2006). Accordingly, Plaintiffs' unjust enrichment claim regarding the 2007 insurance proceeds should have been brought no later than 2009.

b.  Equitable Tolling

Plaintiffs invoke the discovery rule, fraudulent concealment doctrine, and continuing violations doctrine as a basis for equitable tolling. The undersigned concludes that Plaintiffs' equitable tolling arguments fail for the same reasons explained in the undersigned's analysis of Plaintiffs' conversion claim.

Therefore, Plaintiffs' claim for unjust enrichment should be dismissed with prejudice under Rule 12(b)(6) as barred by the two-year statute of limitations provided by Texas law.

**(6)  Plaintiffs' claim for breach of fiduciary duty or breach of trust is time-barred.**

Plaintiffs allege that InterBank "breached its duty of trust owed to Plaintiff by advancing its own interests at the expense of Plaintiff because Defendant is being sued in the Litigation in its capacity as Trustee for failing to protect the interests of Plaintiff."  Dkt. No. 65 at 10.  InterBank contends that Plaintiffs' breach of trust claim must be dismissed as time-barred and because InterBank owed no fiduciary duty to Plaintiffs under Texas law.

For Plaintiffs to prevail on their claim for breach of trust, which is more commonly referred to as breach of fiduciary duty, they must establish: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary duty; and (3) the breach resulted in injury to the plaintiff or benefit to the defendant.  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citation omitted).

Plaintiffs assert in their response to InterBank's 12(b)(6) motion that InterBank, as a financial institution, i.e., a bank, owes a customer a "fiduciary duty" when a customer entrusts money to InterBank.  However, this broad assertion is contrary to the general rule provided by Texas law.  InterBank correctly observes that Texas law does not deem the relationship between borrower and lender as a fiduciary relationship or other special relationship.  *Manufacturers' Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston 1991, no writ.) (citing *Victoria Bank & Trust Co. v. Brady*, 779 S.2d 893, 902 (Tex. App.—Corpus Christi 1989, *affirmed in part, reversed on other grounds*, 811 S.2d 931 (Tex. 1991)); *see also Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) (the relationship between a bank and its customers does not create a special or fiduciary relationship).

Although the existence of a duty under Texas law is ordinarily a question of fact, if there is no evidence to establish the requisite relationship giving rise to a duty, the matter becomes a

question of law. *See Martinez v. Sec. State Bank of Pecos*, No. 08-00-00257-CV, 2001 WL 842090, at *4–5 (Tex. App.—El Paso July 26, 2001, no pet.) (not designated for publication) (citing *Crim Truck & Tractor Co. v. Navistar International Transportation Corp.*, 823 S.W.2d 591, 594 (Tex. 1992)).

Plaintiffs also claim, through their Response, that they fit within an exception to the general rule that banks owe no fiduciary duty to their customers because InterBank's president, Tommy Sloan, acted as a financial adviser to the Plaintiffs. Dkt. No. 77 at 19. However, Plaintiffs cite no authority in support of this exception. Indeed, as alluded to above, borrower-lender relationships in Texas are presumed to be arms' length and no fiduciary relationship is implied. To the contrary, the banker — in this case, Sloan — had a fiduciary duty to the bank where he was an agent. *Cogan v. Triad Energy*, 944 F. Supp. 1325, 1329 (S.D. Tex. 1996). To the extent that Sloan had a duty to investigate the risks of the 2010 note transaction and disclose those risks, that duty was to InterBank, not to Plaintiffs. *See Thigpen*, 363. S.W.2d at 253. And as for Plaintiffs' plea for this Court to carve out an exception based on Sloan's acting as their financial adviser, "[t]he law rejects the proposition that lenders become fiduciaries by exchanging business information or [even] 'advice' with their borrowers." *Cogan*, 944 F. Supp. at 1330.

It is theoretically possible for a fiduciary relationship to be found to exist in Texas where a bank officer has a long-standing "moral, social, domestic or purely personal" relationship with a borrower. *See In re Letterman Bros. Energy Securities Litigation,* 799 F.2d 967, 975 (5th Cir. 1986) (quoting *Thigpen*, 363 S.W.2d at 253). This may be true particularly when a long-standing relationship is coupled with findings that the bank officer negotiates the terms of a loan for the borrower, recommends the loan to the borrower, and deliberately withholds a material fact from the borrower in the process. *Rogers v. Penland*, No. 4:03-CV-160, 2004 WL 7330261 *10-11

45

(2004) (quoting *In re Letterman*, 799 F.2d at 975). However, the subjective reliance of the borrower or even extensive prior dealings between the borrower and bank officer will not alone give rise to such a relationship. *In re Letterman,* 799 F.2d at 975.

Plaintiffs allege that Plaintiff Roger Middaugh "started banking with what was then known as First Coleman National Bank of Coleman in 1997." Dkt. No. 65 at 2. They further allege that Plaintiff Roger Middaugh subjectively relied on Sloan, claiming: "Plaintiff was relying solely on Defendant, believing that Mr. Thomas Sloan, the Defendant's President was looking out to his interest." *Id*. However, these allegations, assumed as true, falls far short of plausibly supporting the type of relationship that would allow the Court to apply the exception to the general rule that a borrower's banker is not his fiduciary.

To the contrary, by 2010 (if not by 2007) when, as alleged, "Defendant suddenly decided to change the terms of the mortgages and pressured Plaintiff [Roger Middaugh] to sign a single note cross-collateralizing all the mortgages and adding balloon provisions . . . threatening that the notes would be called if Plaintiff did not cooperate," it was either clear to Plaintiff Roger Middaugh, or through the exercise of reasonable diligence should have been, that the relationship between Plaintiffs and InterBank had become sufficiently adversarial to make Plaintiffs' reliance on InterBank or Sloan for financial advice both unlikely and unreasonable.

In the instant case, though, the Court need not decide whether a fiduciary relationship existed between Plaintiffs and InterBank because Plaintiffs' breach of trust claim is clearly time-barred by the statute of limitations.

The statute of limitations for breach of trust or breach of fiduciary duty is four years. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(5); *Civelli v. J.P. Morgan Chase Securities, LLC*, No. H-17-3739, 2018 WL 3121793, at *3 (S.D. Tex. June 26, 2018). Though Plaintiffs' claim for

46

breach of trust in their First Amended Complaint rests on threadbare allegations, it appears to be factually premised on information provided by InterBank to Plaintiffs in connection with the 2010 note transaction. Thus, Plaintiffs' claim for breach of trust accrued in 2010.

Plaintiffs' claim for breach of trust is barred because Plaintiffs did not assert that claim until well after the four years provided by the statute of limitations, and Plaintiffs do not argue that equitable tolling applies to this claim.

Accordingly, Plaintiffs' claim for breach of trust should be dismissed with prejudice under Rule 12(b)(6) as barred by the four-year statute of limitations provided by Texas law.

### (7) Plaintiffs fail to state a claim for negligent misrepresentation

Plaintiffs, through their First Amended Complaint, allege that "Defendant provided information to Plaintiff or in the course of the transaction in which Defendant had a pecuniary interest." Dkt. No. 65 at 11. This "information" that forms the basis for this claim appears to be Defendant's representation that it would fulfill its legal obligations to Plaintiffs. *Id*. Otherwise, and despite multiple efforts to amend their pleadings, Plaintiffs merely recite the elements of a negligent misrepresentation claim. InterBank avers that Plaintiffs' negligent misrepresentation claim is barred by the statute of limitations. Alternatively, InterBank moves to dismiss Plaintiffs' negligent misrepresentation claim for failure to state a claim. The undersigned finds that both grounds support dismissal of this claim under Rule 12(b)(6).

In order to state a claim for negligent misrepresentation under Texas law, a plaintiff must demonstrate that: (1) a defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered

pecuniary loss by justifiably relying on the representation. *LHC Nashua P'Ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.,* 659 F.3d 450, 458 n.8 (5th Cir. 2011) (quoting *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

However, "[a]s a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort." *Heller Fin., Inc. v. Grammco Computer Sales, Inc*. 71 F.3d 518, 527 (5th Cir. 1996). This is not to say that an act cannot constitute both a tort and a breach of contract. However, where the acts of a party may constitute either a tort or a breach of contract, "[t]he nature of the injury most often determines which duty or duties are breached. When the injury is only economic loss to the subject of a contract itself the action sounds in contract alone." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

Further, "a party states a tort claim when the duty allegedly breached is *independent* of the contractual undertaking *and* the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co*., 445 S.W.3d 716, 718 (Tex. 2014) (emphases added). However, in Texas recovery in tort for the economic losses caused by the failure of a party to perform under a contract are generally precluded under the Economic Loss Doctrine. *Lamar Homes, Inc. v. Mid-Continent Cas. Co*., 242 S.W.3d 1, 12 (Tex. 2007) (citing *DeLanney*, 809 S.W.2d at 494–95).

One court in this district has said that "[i]n determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. Of S. Fla. V J.C. Penney,*

*Corp., Inc.*, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 45–47 (Tex. 1998)).

Here, the only alleged misrepresentation is that InterBank represented that it would fulfill its legal obligations under the contract when it did not do so.  Dkt. No. 65 at 11.  This allegation clearly references InterBank's duty created under the 2010 note.  Moreover, the only damages alleged in connection with this claim would appear to be the economic damages flowing from Plaintiffs' reliance on this alleged misrepresentation.

Accordingly, the undersigned concludes that Plaintiffs have failed to state a claim for negligent misrepresentation above and beyond their claim for breach of contract based on these same facts and contractual obligation, and that this claim should be dismissed under Rule 12(b)(6) for failure to state a claim.

a.  <u>Statute of Limitations</u>

To the extent Plaintiffs have attempted to state a claim for negligent misrepresentation, that claim is subject to a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *Potter v. Kaufman & Broad Home Sys. of Tex., Inc.*, 137 S.W.3d 701, 705 (Tex. App.—San Antonio 2004, no pet.) (applying two-year statute of limitations to negligence claims); *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Co.*, 20 F.3d 1362, 1372 (5th Cir. 1994) (holding that two-year statute of limitations for negligence claims also applies to negligent misrepresentation claims).  Here, Plaintiffs' factual allegations in support of this claim occurred in 2010 and, as explained elsewhere, they knew of the facts giving rise to that claim, to the extent it existed, in 2010.  Therefore, any such claim would also be barred by the applicable statute of limitations.

b.  Equitable Tolling

Plaintiffs aver that the discovery rule, fraudulent concealment doctrine, and continuing violations doctrine apply to their claim for negligent misrepresentation and request equitable tolling.  For the same reasons explained above in connection with Plaintiffs' efforts to invoke these equitable doctrines in connection with the events of 2010, the undersigned concludes that Plaintiffs have again failed to demonstrate the applicability of equitable tolling to their negligent misrepresentation claim.

Accordingly, Plaintiffs' negligent misrepresentation claim is also dismissible as barred by the two-year statute of limitations.

**(8)  Plaintiffs' intentional infliction of emotional distress ("IIED") claim is time-barred.[7]**

Plaintiffs claim that InterBank "intentionally and/or recklessly placed Plaintiffs in a position where [Roger Middaugh] could not defend himself and his interest without hiring legal counsel" and that InterBank "was aware their conduct and illegal actions would cause Plaintiffs to be at a disadvantaged position."  Dkt. No. 65 at 12.  Plaintiffs further allege that InterBank "knew their actions would cause Plaintiffs emotional distress because Defendant was aware that the property in which Plaintiffs invested much money into, also held emotional value to them, and the economic stress would damage them."  *Id*.  InterBank moves to dismiss Plaintiffs' IIED claim on the basis that it isbarred by the applicable statute of limitations.

To sufficiently state a claim for IIED, a plaintiff must allege that: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the

---

[7] Plaintiffs, in their First Amended Complaint, asserted a claim for "extreme and outrageous conduct." Plaintiffs subsequently withdraw that claim in their 12(b)(6) response.  Thus, the undersigned has not considered it.

defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress was severe. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006).

Here, Plaintiffs' factual allegations in support of their IIED claim are vague, ambiguous, and unspecific in time. However, accepting what allegations exist as true, and viewing them in a light most favorable to Plaintiffs, the undersigned concludes that Plaintiffs have pleaded enough facts to state a claim for IIED that is plausible on its face to the extent of InterBank's activities in connection with the more recent foreclosure and sale of Plaintiffs' properties that occurred beginning in 2019 and after. However, for the reasons explained below, to the extent Plaintiffs allege a claim of IIED relate to the events surrounding the 2010 note transaction or are otherwise outside the applicable two-year statute of limitations, those are time-barred.

    a.   <u>Statute of Limitations</u>

As just noted, the statute of limitations for an IIED claim is two years under Texas law. Tex. Civ. Prac. & Rem. Code § 16.003(a). Other than Plaintiffs' general accusations regarding InterBank's alleged "conduct and illegal actions," Plaintiffs allegations are vague and ambiguous. They do not identify in their First Amended Complaint the specific actions taken by InterBank that give rise to their IIED claim. InterBank contends that Plaintiffs' claim accrued based on alleged events in 2007, *i.e.*, insurance proceeds from the hailstorm, or 2010, *i.e.*, Plaintiff and InterBank's signing of the 2010 note, and therefore, InterBank argues that such a claim is time-barred. However, it appears that Plaintiffs claim for IIED relate only to the events surrounding the 2010 note transaction and thereafter, leading up to the more recent foreclosure and sale activities in 2019.

To the extent that the 2010 note transaction serves as the factual linchpin for Plaintiffs' IIED claims, those claims should have been brought no later than 2012. Plaintiffs assert that the

discovery rule, fraudulent concealment doctrine, and continuing trespass doctrine warrant equitable tolling with respect to their IIED claim. In Plaintiffs' Rule 12(b)(6) Response, they assert that "[o]n 2010, Defendant began his campaign of aggression against Plaintiffs when he forced Plaintiff to sign new loan documents to cross-collateralize his properties, thus causing much emotional distress." Dkt. No. 77 at 20.

For the same reasons outlined in the undersigned's analysis of Plaintiffs' breach of contract and duress claims, the undersigned finds that equitable tolling should not apply to Plaintiffs' claim for IIED insofar as those claims are based on the 2010 note transaction.

Accordingly, Plaintiffs' claim for IIED related to those two events should be dismissed with prejudice under Rule 12(b)(6) as barred by the two-year statute of limitations provided by Texas law.

However, as concluded above, to the extent Plaintiffs IIED claims arise from the more recent alleged conduct by Interbank, i.e., those specifically in furtherance of the foreclosure and sale of Plaintiffs' property beginning in 2019, those claims should survive InterBank's Rule 12(b)(6) motion.

**(9) Plaintiffs state a plausible abuse of process claim.**

Plaintiffs allege in their state court petition that InterBank's actions relating to its efforts to foreclose on Plaintiff Roger Middaugh's properties constituted abuse of process. The undersigned finds that Plaintiffs' claim for abuse of process is sufficient to survive dismissal under Rule 12(b)(6).

To state a claim for abuse of process under Texas law, a plaintiff must show: "(1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damage as a result of the illegal act."

52

*Montemayor v. Ortiz*, 208 S.W.3d 627, 649 (Tex. App.—Corpus Christi 2006, pet. denied).  An abuse of process claim "requires a showing of a wrongful seizure of property or an actual inference with the person."  *Ausley v. Cross County Water Supply Corp.*, No. A-09-CA-660-SS, 2009 WL 5215401, at *4 (W.D. Tex. Dec. 28, 2009) (dismissing plaintiffs abuse of process claim when they offered no evidence of injury sufficient to support the claim, such as the wrongful seizure of property (quoting *RRR Farms, Ltd. v. Am. Horse Prot'n. Ass'n, Inc.*, 957 S.W.2d 121, 133 (Tex. App.—Houston [14th Dist.] 1997, pet. denied))).  "Texas law supplies a two-year statute of limitation to abuse of process claims."  *Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.*, No. Civ.A. H-04-2322, 2004 WL 3331843, at *8 (S.D. Tex. Nov. 15, 2004) (citing Tex. Civ. Prac. & Rem. Code § 16.003)).

The foreclosure proceedings began in 2019, the same year Plaintiffs filed suit.  Dkt. No. 65 at 4.  Plaintiffs contend that, at the initiation of the foreclosure proceedings, InterBank failed to comply with notice requirements, issued competing notices, relied on expired deeds of trust as basis to begin the foreclosure process.  Dkt. No. 65-1 at 7–8.

Here, accepting Plaintiffs' facts as true as the Court must and construing these factual allegations in the light most favorable to Plaintiffs, the undersigned finds that Plaintiffs have alleged a claim for abuse of process that is plausible on its face and, therefore, sufficient to survive dismissal under Rule 12(b)(6).

**(10) Plaintiffs fail to state a claim for *quantum meruit*.**

Plaintiffs allege in their state court petition a claim for *quantum meruit*, contending that "[P]laintiff has paid the defendant on the loans which would be the basis of the foreclosure sale" and that "the defendant has overcharged, overbilled, and otherwise taken and received payments over and above the amounts actually due to the defendant via the loans and/or notes . . . in an

amount that exceeds $10,000." Dkt. No. 65-1 at 8–9. Plaintiffs seek damages and attorney's fees in an amount exceeding $10,000.00 through their *quantum meruit* claim. *Id*. at 9. The undersigned concludes that Plaintiffs are unable to make out a claim for *quantum meruit*, or, in the alternative, a claim for unjust enrichment.

*Quantum meruit* is an equitable theory of recovery which is based on an implied agreement to pay for benefits received, usually personal services. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). To recover under the doctrine of *quantum meruit*, a plaintiff must establish that: "1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Id*. at 944; *accord Heldenfels Bros., Inc. v City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

*Quantum meruit* "is an independent cause of action that allows recovery when there is no express contract covering the services rendered." *Nart v. Open Text Corp.,* No. A-10-CA-870-LY, 2011 WL 3844216, at *4 (W.D. Tex. Aug. 29, 2011) (citing *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 683–84 (Tex. 2000)). This general rule does not preclude a plaintiff from alleging quasi-contract theories of recovery in addition to asserting a claim for breach of contract.[8] *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 704 (S.D. Tex. 2011)

---

[8] *Quantum meruit* is a theory of recovery based on the principles of unjust enrichment. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985); *Althoz v. Citimortgage, Inc.*, No. 3:12-CV-02774-P, 2012 WL 12886979, at *9 (N.D. Tex. Dec. 13, 2012). While these theories of recovery are closely related, Texas law recognizes *quantum meruit* as an independent cause of action but it does not extend the same recognition to unjust enrichment. *Nart*, 2011 WL 3844216, at *4; *Hancock*, 635 F. Supp. 2d at 560 (unjust enrichment not an independent cause of action).

(concluding that *quantum meruit* and unjust enrichment claims may be asserted under Texas law in the alternative to a breach of contract claim).  Moreover, even when a valid, express contract exists, the Texas Supreme Court has recognized an exception to this rule under circumstances where overpayment is made under the contract.  *Southwestern Elec. Power Co. v. Burlington Northern Railroad Co.*, 966 S.W.2d 467, 469–470 (Tex. 1998) (citing cases and observing that "in some circumstances overpayments under a contract may give rise to a claim for restitution or unjust enrichment"); *accord Picard*, 2011 WL 5333060, at *4.

Here,  Plaintiffs *quantum meruit* claim is factually based on their allegations that InterBank "overcharged, overbilled, and otherwise [took] and received payments" over the amounts actually due under the loans or notes previously held, in an amount exceeding $10,000.00."  Dkt. No. 65-1 at 9.  These allegations are conclusory.  Notably, Plaintiffs fail to allege that they provided a benefit to InterBank for which they expected compensation or to which InterBank was not already entitled to receive, such as payments under the mortgage.  Courts within the Fifth Circuit have consistently held that recovery under a theory of *quantum merit* is barred under these circumstances. *See*, *e.g.*, *Adam v. Chase Bank*, No. 3:14-CV-3157-K, 2015 WL 2168127, at *6 (N.D. Tex. May 8, 2015); *Pennington v. HSBC Bank USA, Nat. Ass'n*, No. A-10-CA-785-LY, 2011 WL 6739609 (W.D. Tex. Dec. 22, 2011).

Nor does Plaintiff adequately make out a basis for unjust enrichment on these facts because, even when taking Plaintiffs' allegations of overpayment as true, and in light of the exception announced by Texas Supreme Court, Plaintiffs fail to sufficiently allege that InterBank received a benefit in the form of overpayment "from fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc.*, 832 S.W.2d at 41.).  Indeed, Plaintiffs make no claim for unjust enrichment in their state court complaint, and the undersigned has already recommended dismissal of

Plaintiffs' unjust enrichment claims added in federal court, which originate from a different set of facts entirely.

For these reasons, Plaintiffs' *quantum meruit* claim should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. In the alternative, if the district judge determines that dismissal of this claim is inappropriate, the undersigned further recommends that the district judge require Plaintiffs to file a more definite statement under Rule 12(e) with respect to their *quantum meruit* claim.

**(11) Plaintiffs' quiet title claim should be dismissed with prejudice.**

Plaintiffs seeks to quiet title, or remove a cloud on title, in their state court complaint. This claim should be dismissed with prejudice for failure to state a claim.

A suit to quiet title is an equitable action to "clear" a clouded title. *Metcalf v. Deutsche Bank. Nat'l Trust. Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *6 (N.D. Tex. June 26, 2012). "Title to property is 'clouded' when a party has an invalid claim to the property that serves to diminish the property's value." *Carter v. Bank of America, N.A.*, No. 3:12-CV-4550-B, 2013 WL 1482610, at *2 (N.D. Tex. Apr. 9, 2013). In order to quiet title, a plaintiff must demonstrate: (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *See Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet denied); *Warren v. Bank of America, N.A.*, 566 F. App'x 379, 382 (5th Cir. 2014).

It is well established in Texas that "a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note." *Cook-Bell v. Mortg. Elec Registration Systems, Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) (citing *Fillion v. David Silvers Company*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ. ref'd n.r.e.)). Here, Plaintiffs do

not allege that they are "current on [their] loan payments and not in default such that [they] would have an interest in the [properties] *superior* to any lienholder seeking to foreclose." *Gray v. Wells Fargo Bank, N.A.*, No. 4:12-CV-576, 2013 WL 3097800, at *2 (E.D. Tex. June 18, 2013). Ultimately, Plaintiffs bear "the burden of supplying the proof necessary to establish [their] superior equity and right to relief." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). In order to prevail on a quiet title claim, Plaintiffs must prove and recover on the strength of their own title, not on the weakness of their adversary's title. *See Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 590 (N.D. Tex. 2013).

At this pleading stage, Plaintiffs fail to allege facts sufficient to state a plausible claim of superior title to property through their conclusory allegations that the "deed of trust" held by InterBank is a "cloud in and for the title to the property which is owned by plaintiff." Dkt. No. 65-1 at 9. Moreover, Plaintiffs fail to allege that their mortgage payments were current, nor do they provide a tender of the amount owed on the note. Their allegations in the state court petition focuses only on the alleged weakness of InterBank's title rather than advancing a plausible claim in support of the superiority of their own title.

These threadbare allegations fail to state a claim for quiet title, and Plaintiffs' claim seeking to quiet title should be dismissed accordingly. *See Ray v. CitiMortgage*, No. A-11-CA-441-SS, 2011 WL 3269326, at *4–5 (N.D. Tex. July 25, 2011) (dismissing plaintiffs' quiet title claim under Rule 12(b)(6) for failure to plead factual allegations regarding the strength of their title); *Reese v. Wells Fargo Bank, N.A.*, No. 3:17-CV-2174-G, 2017 WL 5992406, at *5 (N.D. Tex. Dec. 4, 2017) (dismissing plaintiff's quiet title claim based on their conclusory and unsupported statements that failed to establish superior title over the defendant's title); *see also Jaimes v. Federal Nat. Mortg. Ass'n.*, 930 F. Supp. 2d 692, 698 (W.D. Tex. 20130 ("Based on the facts alleged by [the plaintiff],

it appears he defaulted on his mortgage, and his home was subsequently foreclosed . . . . Those facts do not state a claim for quiet title . . . .").

For the above reasons, Plaintiffs' quiet title claim should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

**(12) - (14)   Plaintiffs' claim for defamation (libel and slander) survives Rule 12(b)(6) dismissal.**

Plaintiffs advance a claim for defamation in their state court petition that appears to relate to the more recent 2019 foreclosure actions by InterBank and one of its officers, Sloan, whom Plaintiffs claim libeled and slandered Plaintiff Roger Middaugh.  There does not appear to be such a claim on behalf of Heather Middaugh.

Texas law recognizes defamation as an intentional tort.  *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ).  "Libel is a type of defamation that is written, as opposed to slander, which is spoken defamation."  *Starrett v. City of Richardson*, No. 3:18-CV-0191-L, 2018 WL 4627133, at *10 n.12 (N.D. Tex. July 27, 2018) (citing *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942)).  Accordingly, the undersigned analyzes these claims together.

"To maintain a defamation cause of action [under Texas law], the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting either with actual malice, if the plaintiff was a public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement."  *Cuba v. Pylant*, 814 F.3d 701, 713–14 (5th Cir. 2016) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).  Texas courts have more recently clarified that the first element requires that the published statement be false.  *In re Lipsky*, 460 S.W.3d 579, 593–594 (Tex. 2015).  Among the types of

statements that qualify as defamation per se are "[r]emarks that adversely reflect on a person's fitness to conduct his or her business or trade[.]" *Id*. at 596.

The statute of limitations applicable to defamation, whether slander or libel, is one year. Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a); *Patterson v. T.V. Channel 25 Broadcast Station*, 489 S.W.3d 589, 592 (Tex. App.—Texarkana 2016, no pet.).

Plaintiffs allege that Sloan made public statements and statements to Plaintiff Roger Middaugh's tenants, such as: "Roger Middaugh has not paid his note or mortgage" and "Roger Middaugh is not allowed to collect rent." Dkt. No. 65-1 at 5–6.  Plaintiffs further allege that InterBank sent letters to tenants stating that the tenants must pay current rents to InterBank in light of Roger Middaugh's default.  *Id*. at 6.

To the above extent, the undersigned finds that Plaintiffs have plead enough facts that, if true, and viewed in a light most favorable to Plaintiff Roger Middaugh, plausibly state a claim to relief.  Accordingly, those claims should survive InterBank's Rule 12(b)(6) motion.  However, to the extent that any such claims relate to events earlier than one year before Plaintiffs filed their suit, those claims would be time-barred by the one-year statute of limitations provided by Texas law.

**(15)  Plaintiffs fail to state a claim for wrongful foreclosure.**

Plaintiffs allege in their state court petition a wrongful foreclosure claim against InterBank for its failure, among other things, to provide Plaintiffs with adequate notice of foreclosure as required by Texas law.  As explained below, Plaintiffs' wrongful foreclosure claim fails as a matter of law and should not survive Rule 12(b)(6) dismissal.

A wrongful foreclosure action is designed to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings.  *Cooper v. Green Tree Servicing LLC*, No. 3:14-CV-

02733-M-BH, 2015 WL 799255, at *4 (N.D. Tex. Feb. 25, 2015) (citing *In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001)). The elements of a wrongful closure claim under Texas law are (1) a defect in the foreclosure proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no. pet.) (citing *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied)). A procedural defect in the foreclosure proceedings may occur when the foreclosing party "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug. 1, 2011).

Recovery on a wrongful disclosure claim "is not available merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011); *see also Webb v. Midland Mortg.*, No. 3:12-CV-5138-M-BF, 2013 WL 4734001, at *2 (N.D. Tex. Sept. 3, 2013) ("Because an inadequate selling price is a necessary element of a wrongful foreclosure claim, a foreclosure sale is a precondition to recovery.").

Plaintiffs pleaded facts supporting the first element of a wrongful foreclosure claim through their assertions that InterBank sought to foreclose on Plaintiff Roger Middaugh's properties without complying with notice requirements provided by law or the terms of the contract between the parties. But Plaintiffs fail to meet elements two and three because they make no mention of a grossly inadequate selling price or a causal connection between a grossly inadequate selling price and the allegedly defective foreclosure proceedings. The undersigned presumes that this omission

is due to the fact that no foreclosure sale had yet occurred at the time Plaintiffs filed their state court petition. *See* Original State Court Petition, Dkt. No. 65-1 at 12–14 (Application for Temporary Restraining Order); *see also* Notice of Removal, Dkt. No. 1 at 1 ("On July 2, 2019, Plaintiff obtained an ex parte temporary restraining order seeking to preclude foreclosure indefinitely . . . . However, the ex parte temporary restraining order was vacated by the [state] court on July 2, 2019 at 1:38 p.m.").

Although Plaintiffs allege that InterBank commenced foreclosure proceedings in March 2019, and they thereafter attempted to amend their complaint several times before the current First Amended Complaint was filed in June 2020, Plaintiffs never alleged either that InterBank sold the properties in question for a grossly inadequate selling price, or that the alleged defects in the foreclosure proceedings caused the properties in question to be sold for a grossly inadequate price. Consequently, Plaintiffs' factual allegations would support, at best, a claim for attempted wrong foreclosure by InterBank. But Texas law provides no independent cause of action for "attempted wrongful foreclosure." *Webb*, 2013 WL 4734001 at *2 (citing *Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex. Civ. App.—Beaumont 1977, no writ); *see also Biggers*, 767 F. Supp. 2d at 729; *EverBank, N.A. v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 544 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (dismissing plaintiff's claim for wrongful disclosure where it was undisputed that no foreclosure sale had occurred).

For these reasons, Plaintiffs' wrongful foreclosure claim should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

**(16) Plaintiffs' state and federal "consumer collection laws" claims should be dismissed.**

Plaintiffs' factual allegations in support of these claims appears to be that InterBank's actions in furtherance of the foreclosure and sale of Plaintiffs' properties "frustrated the

requirements of the note, and the laws of Texas and the United States of America." Dkt. No. 65-1 at 7. Plaintiffs further allege that "Defendants attempt of acceleration, if any, of the mortgage that was not in compliance with lien perfection according to Texas Local Government Code" section 192.007 which, they appear to allege, requires that any notice of acceleration related to a deed of trust be filed, registered, or recorded in the same manner as the deed of trust. *Id*.

Plaintiffs appear to be alleging that since InterBank failed to file, register, or otherwise record with the relevant county clerk its notice of acceleration related to the foreclosure of Plaintiffs' property, InterBank "did not have standing or authority to foreclose on the property and were not entitled to collect on the alleged debt." *Id*. Plaintiffs plead no facts in support of their claim that InterBank violated federal laws.

Plaintiffs' allegations, if accepted as true and viewed in a light most favorable to plaintiff, appear to be nothing more than a recasting of their claims for abuse of process or wrongful foreclosure. Since the undersigned recommends above that Plaintiffs claim for abuse of process survives InterBank's Rule 12(b)(6) motion, these factual allegations should be allowed in support of that claim. Otherwise, Plaintiffs' have failed to plead or support through factual allegations a claim under either state or federal debt collection laws, or even identify which laws they claim were violated, other than discussed above. While their allegations may make InterBank's liability under state or federal debt collection laws conceivable, they fail to nudge those claims across the line to the realm of plausibility. *See Iqbal*, 556 U.S. at 678.

Accordingly, Plaintiffs' claims for violations of state and federal "consumer collection laws" should be dismissed with prejudice under Rule 12(b)(6) for failure to state.

## V.  CONCLUSION

For these reasons, the undersigned United States magistrate judge RECOMMENDS that InterBank's Motion to Dismiss under 12(b)(6) (Dkt. No. 76) be GRANTED IN PART as to Plaintiffs' claims for breach of contract, duress, fraud, conversion, unjust enrichment, negligent misrepresentation, breach of trust, intentional infliction of emotional distress insofar as these claims related to transactions or events occurring in 2007 and 2010, and that those claims be dismissed with prejudice.  The undersigned further RECOMMENDS that Plaintiffs' claims for *quantum meruit*, quiet title, wrongful foreclosure, and violations of federal and state "consumer collections law" be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Plaintiffs' claims for breach of contract in connection with events arising from the 2019 foreclosure and sale of Plaintiffs' properties, abuse of process, defamation, libel, and slander have been pleaded in a manner sufficient to avoid dismissal under Rule 12(b)(6).

Alternatively, if not dismissed under Rule 12(b)(6), the undersigned RECOMMENDS that InterBank's Motion for More Definite Statement under Rule 12(e) be GRANTED IN PART to the extent that Plaintiffs should be required to replead their fraud by forgery claim and IIED claim to the extent that those claims relate to events not barred by the statute of limitations.

The undersigned further RECOMMENDS that InterBank's Motion for Judgment on the Pleadings under Rule 12(c) be DENIED.

## VI.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b).  To be specific, an objection must

identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs*. *Auto*. *Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IT IS SO ORDERED this 5th day of February, 2021.


_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE